1811.

SPANGLER
v.
COMMON-
WEALTH.

---

The Commissioners of BERKS County Assignees of OSBURN *against* ROSS.

Lancaster,
Saturday,
May 25.

UPON an appeal from the decision of *Brackenridge* J. at a Circuit Court for *York* in *May* 1809, the case was thus:

It was an action of debt on a bond dated the 8th *Nov.* 1802, by *Ross* to *Osburn*, who had assigned it to the plaintiffs on the 22d *June* 1804, and the pleas were payment with leave, and a defalcation, to which the plaintiffs replied *non solvit*, and no defalcation.

On the trial of the cause, the defendant offered in evidence the deposition of *Obadiah Underwood*, taken under a rule of court which authorized depositions to be taken before a justice of the peace of *Washington* county; producing at the same time a certificate of the prothonotary of *Washington* county, that *William Meetkirke* before whom the deposition had been taken, was a justice of the peace for that county. But the plaintiffs objected, because the deposition did not state, nor did it appear any where on the face of it, that *Meetkirke* was a justice. His honour overruled the objection.

Another objection was taken to a part of the deposition, because it contained evidence of a settlement between *Osburn* and *Ross*, by which it appeared that *Osburn* was indebted to the defendant after crediting the amount due on the bond; but it did not distinctly appear whether this set-

A deposition taken before a person who is actually a justice of the peace, though he is not so described in the writing, is good. A magistrate cannot devest himself of his judicial capacity to administer an oath, while his commission is in force; and therefore whenever he administers an oath, it shall be taken to have been done judicially.

Notice of an account or debt intended to be defalked is not necessary where the defalcation has been pleaded specially. The rule applies only to cases where the defendant pleads the general issue.

Where an account stated, deed, or document, is offered in evidence to the jury, the court may either decide themselves that it is or is not sufficiently proved, and admit or reject it accordingly, or they may refer the evidence to the jury, instructing them to disregard the deed &c., unless they are satisfied with the proof of its execution.

1811.

COMMIS-
SIONERS
of
BERKS Co.
v.
Ross.

tlement was before or after the assignment. Judge *Bracken-ridge* suffered the part in question to be read, at the same time instructing the jury, that unless they could fairly collect from the deposition that the settlement was before the assignment, they should disregard it altogether.

The jury found a verdict for the defendant, which the judge refused to set aside, and the plaintiffs appealed.

*Hopkins* for the appellants. There are three objections to the deposition of *Underwood.* 1. It is not stated on the face of the deposition that *Meetkirke,* before whom the deposition was taken, was a justice of *Washington* county. 2. The deposition proves matter of defalcation of which no notice was given, according to rule 28th of the Circuit Court. 3. It does not appear that the settlement between *Osburn* and *Ross* was made before the assignment of the bond.

1. As the official character of *Meetkirke* does not appear in the deposition, the court must suppose that he acted in his private capacity. The acts of such magistrates are construed strictly, and unless the judicial character appears, the proceeding is *coram non judice.*

2. [Upon examining the record this point was given up; the rule applying only to cases where the general issue is pleaded.]

3. The deposition speaks of declarations of *Osburn* in the spring of 1804 or 1805, relative to the settlement. If in 1804, they were evidence; if in 1805, they were not. The very circumstance then which made this part of the deposition evidence, was the time to which it referred, and it was not evidence unless distinctly proved. The judge therefore erred in leaving that point to the jury, because the deposition ought not to have gone to the jury, till that point was settled.

*Bowie* for the defendant. The first exception is rather a nice one. It cannot be denied that *Meetkirke* was a justice, but the deposition is supposed to be bad, because he does not call himself so. Provided we have the substance, the form is immaterial. All that is important is his power to administer an oath; and he could not devest himself of that,

in whatever character he acted, while his commission was in force.

As to the other objection, it is in collision with the almost universal practice. If a judge is not satisfied with the proof of a deed offered in evidence, either from the character of the witness or any other circumstance, he may admit it, referring the proof to the jury. It was entirely a question of fact, whether the declarations were before or after the assignment, and it was properly left to the jury to decide. The judge is satisfied with the verdict, and there is no doubt that justice has been done.

TILGHMAN C. J. This action was brought on a bond of the defendant to *Obadiah Osburn*, dated 8th *November* 1802, and assigned by *Osburn* to the plaintiffs 22d *June* 1804.

On the trial in the Circuit Court, the deposition of *Obadiah Underwood* was produced as evidence on behalf of the defendant, and admitted by the court, although objected to by the counsel for the plaintiffs. Whether it was legal evidence is the question.

Two reasons have been urged in support of the objection to the evidence. 1. That the person before whom the deposition was taken, does not style himself a justice of the peace. 2. That the deposition contains evidence of a settlement of accounts between *Osburn* and the defendant, by which it appeared that *Osburn* was indebted to the defendant in the sum of 20 dollars, after crediting the amount due to *Osburn* on the bond; but it did not clearly appear, whether this settlement was previous to the assignment of the bond to the plaintiffs.

1. Although *Wm. Meetkirke*, before whom the deposition was taken in the county of *Washington*, does not style himself a justice of the peace, yet it was proved that he was a justice, by a certificate of the prothonotary of the court of Common Pleas of that county. Whether he called himself a justice or not, is not material, as there is satisfactory evidence that he was a justice. We are not to construe this transaction with the same strictness, as if we were examining a record of a conviction by a justice of the peace under a penal statute. In such a case, it might be necessary that

.1811.

COMMIS-
SIONERS
of
BERKS Co.
*v.*
ROSS.

his authority should appear on the face of the record, because the sufficiency of the conviction must be tried *by the record.* But where a rule of court is made, to take depositions before a justice of the peace, the object of the rule is obtained, if the deposition is in fact taken before a justice; and if that fact is questioned, the court who made the rule will take care to be satisfied of it, before they suffer the deposition to be read. In the present instance, they had convincing testimony. The official certificate of the prothonotary is stronger evidence, than the assertion of the justice himself. But it is said, that not having called himself a justice, he acted not in his official but in a private capacity. The answer to this objection is plain. The taking of the deposition is in its nature an official act, and as long as the commission of the justice was in force, he possessed an authority to administer oaths, of which he could not devest himself.

2. That part of the deposition which relates to the settlement between *Osburn* and the defendant, was admitted specially. The judge told the jury he left it to them to decide, whether the settlement was *before* or *after* the assignment of the bond. Of this they were to judge from the whole of the deposition; and if they should think that the settlement was *subsequent* to the assignment, they were to pay no regard to it. I cannot see why the deposition might not be admitted under this restriction. If it had appeared *clearly* to the *judge*, that the settlement was *subsequent* to the assignment, he ought not to have permitted it to go in evidence. But it was doubtful; he left it therefore to the jury to decide the previous point, on which the validity of the evidence turned. It is something analogous to the common case of a deed being offered in evidence, which is to be proved before it is read to the jury. The court if they please may decide whether it is sufficiently proved; but they may, and frequently do, leave it to the jury, to determine the sufficiency of the proof, and then the deed is read; but the jury are told, that they are not to consider it as of any validity, unless they are satisfied that it was executed by the party. In that case, as in this, there is a previous question, which at the discretion of the court may be either decided by themselves, or sub-

mitted to the jury. I am of opinion, that the deposition was legal evidence under the restriction with which it was admitted.

YEATES J. It has been objected by the plaintiffs' counsel, that the deposition of *Obadiah Underwood* was inadmissible in evidence, inasmuch as it does not appear in the body of it, that *William Meetkirke* esquire before whom the deposition was taken, was a justice of the peace of *Washington* county. It is certain that it would be more correct in point of form, if it had been so expressed in the instrument. But the question is whether the want of it be such a defect, as would prevent the reading of the deposition under the circumstances of this case?

The rule of court directs that the deposition be taken, and in pursuance thereof *Underwood* appeared on the 30th *April* 1808, and being duly sworn did depose and say, &c. He signs his name to the deposition, which was written on the same sheet of paper whereon the rule of court was certified by the clerk of the Circuit Court, to which are subjoined the words, " Sworn and subscribed, *Wm. Meetkirke;*" and on the same day a certificate is given by the prothonotary of the court of Common Pleas of *Washington* county, under his seal of office, that *Wm. Meetkirke* esquire was then a justice of the peace of the same county.

I well recollect that some years ago it was the usual practice to read depositions taken in other counties than where the trial was had, without the certificate of the prothonotary that the person who administered the oath, was a justice of the peace. It cannot however be denied, that in all cases the certificate of the prothonotary is much safer and superior evidence to rely on, as establishing the truth of that fact, than the words of the party himself styling himself a justice of the peace. No reasonable doubt can be entertained here, that *Meetkirke*, while doing those things which appertained to his official character, acted in his public capacity as a justice of the peace. A natural as well as necessary implication arises in my idea, that such was the case.

It has been further urged, that the notice of the matter intended to be insisted on by way of defalcation, was not

sufficiently special to justify the reading of this deposition. Two acts of assembly exist in this state upon this subject. The first was the old act for defalcation passed in 1705. 1 *Dall. St. Laws* 65. The second is the act for the relief of insolvent debtors passed in 1730; *Ib.* 263.; under the tenth section whereof it is provided, that where there are mutual debts, one debt may be set against the other, and such matter may be given in evidence upon the general issue, or pleaded in bar, as the nature of the case shall require; so as at the time of pleading the general issue, where any debt is intended to be insisted on in evidence, notice shall be given of the particular sum or debt so intended to be insisted on, and upon what account it became due, or otherwise such matter shall not be allowed in evidence upon such general issue. This section is copied almost *verbatim* from the *British* statute of 2 *Geo.* 2. *c.* 22. *s.* 13., 5 *Ruff. Stat.* 691. The twenty-eighth rule for regulating the practice of the Circuit Court directs, that where the defendant intends on the *general issue* to defalk his account against the plaintiff's demand or any part of it, he shall give notice thereof in writing at least ten days before the trial, and at the same time furnish him with a copy of the account which he intends to give in evidence and rely on. It has been said, that these notices of set-off should almost be as certain as declarations. *Espin. Dig.* 241. But this evidence was not offered under the general issue. For the defendant not only pleaded payment with leave &c., but also a defalcation, to which the plaintiffs replied no defalcation. He might have insisted on the plea's stating the defalcation more particularly, or at least on a copy of the items meant to be insisted on. But when he submitted to this general plea and took issue upon it, he clearly waived his right to a special notice.

Finally, it has been objected that what passed between *Osburn* and *Ross* respecting their settlement, as contained in the deposition, ought not to have been received in evidence, unless it had been *undeniably* established to the satisfaction of the judge, that this transaction preceded the assignment of the bond on the 22d *June* 1804. I think that fact may fairly be inferred from circumstances detailed in the deposition; but it is certain, that the agreement for building the

1811.

COMMIS-
SIONERS
of
BERKS Co.
v.
Ross.

bridge was made in *August* 1801, that the defendant about that time provided tools for *Osburn* to carry on the work, and paid several debts for him, and that his black man assisted him in the labours of the bridge between one and two years. This work was wholly discontinued before the bond was assigned to the plaintiffs; and it was agreed in the first instance, that this account should be deducted from the bond. The different items subsisted and formed unquestionable subjects of defalcation against the plaintiffs as assignees; though it was equivocal on the face of the instrument, whether the actual settlement took place early in the spring of 1804 or of 1805. Judge *Brackenridge* admitted the deposition to go to the jury, after striking out such parts of it as were deemed improper, with this direction, that unless they could fairly draw the inference of fact from the deposition, that the matters objected to therein were prior in point of time to the assignment, they should not regard them as evidence in forming their verdict. He considered the deposition as subjected to the same rules, which would obtain if the witness had been orally examined.

The question then is, was this illegal? I apprehend not, and that the judge conformed to the correct law and practice in such cases. It will be admitted, that if these matters had been sworn to by the witness *viva voce* in court, that the direction would have been correct. How can it be varied by being reduced to writing? What was done or said would be proper or improper testimony, according to the real time when it took place. Suppose, in addition to the case cited by the Chief Justice, an action for goods sold, and the defendant sets up a receipt of the plaintiff or a supposed agent, for the whole, or part of the sum demanded. If it be fully established that the receipt is not genuine, or the agency be disproved, the court would feel no difficulty in rejecting the paper. But on the other hand, if either of these facts should be doubtful on the proof before the court, would it not be more safe and correct, and more congenial to the spirit of our judicial system, to submit the question to the decision of the jury, with proper instructions to them as to the operation of the law according to the truth of the fact as found by

1811.

COMMIS-
SIONERS
of
BERKS Co.
*v.*
Ross.

them? I have no hesitation in holding the affirmative an-swer, and that such has been the practice.

I am of opinion on the whole case, that its merits are clearly with the defendant, that justice has been done by the verdict, and that the judgment of the Circuit Court be af-firmed.

Judgment affirmed.