Tilghman C. J.
According to the entry in the plaintiffs’ book, they sold to the defendant on the 30th November 1808, fourteen chests of tea at one dollar 15 cents a pound on 60 days’ credit, and interest from the end of 60 days, to be paid when taken away, and not to exceed 90 days. The tea was not taken away within the 90 days, and it appears that some dispute took place between the parties, concerning the terms of the contract. On the 24th May 1809, the tea still remaining in the plaintiffs’ store, the defendant signed the agreement which was given in evidence. By this agreement the plaintiffs were to sell the tea on account of the defendant, and credit him with the nett proceeds, and the defendant was to make good the difference which should be between the plaintiffs’ bill and the proceeds of the sale. There is no doubt but this agreement was intended to have some effect on the original contract. It cannot be said, that the plaintiffs might have commenced an action immediately after the signing of the agreement. A reasonable time should have been allowed for making the sale. It seems to have been taken for granted that the tea might be sold, and so it certainly might at some rate. But I do not conceive that the plaintiffs would have been justified in sacrificing it at a very low price, or by a sale at a public auction, without the defend *268 ant’s consent. The plaintiffs were dealers in tea, and it was their duty to take the same means of disposing of this tea, *khat a Pendent man would of his own. But suppose there should be no offer for it at private sale, are they to wait for their money for ever ? By no means. If no purchasers offered in a reasonable time, the plaintiffs should have given notice to the defendant and requested him to give instructions how to act, or to come and pay the debt and take away the tea. The plaintiffs had a lien which they had a right to hold ; and unless the defendant after receiving notice, came forward and paid the money, or pointed out some way in which the tea should be disposed of, either by public auction or otherwise, so as not to deprive the plaintiff's of their lien, he would have been subject to an action for the whole debt. But the plaintiffs have failed in their evidence. They have shown nothing of any notice or application to the defendant prior to the bringing of the suit. Perhaps after giving such notice as I have mentioned, the plaintiff's would have been justified in selling the tea at public auction; but this it is unnecessary to decide. I concur with the judge who tried the cause in the opinion, that on the evidence the plaintiffs were not entitled to recover. I am therefore for a new trial.
Yeates J.
It is perfectly clear, that the agreement of 24th May 1809 varies and modifies the contract of sale for the 14 chests of hyson tea made on the 30th November preceding. It contains an acknowledgment that the defendant had bought the teas and admits the delivery. It further states that the plaintiffs had agreed to take the tea on sale for the account of the defendant, and credit him with the proceeds; and that the defendant engaged to make up any loss which might accrue on the tea, that is, the difference between their bill and the nett proceeds. It follows, therefore, that it was incumbent on the plaintiffs to show, that they had made use of reasonable efforts to convert the articles into cash, and had failed therein, before they could recur to the original contract. But if they had honestly endeavored to dispose of the tea and could not effect it, and had given due notice thereof to the defendant, I am of opinion, that in such case, they might support a suit on the original sale. The plaintiffs did not prove these pre-reqnisites on the trial, and the verdict is .not warranted by the evidence which they produced. I am, therefore, of opinion that a new trial should be warded, and that the costs of the late trial should await the event of the suit.
*269 Brackenridge J.
The defendant in this ease purchased of the plaintiffs certain parcels of tea, for which he was to pay at sixty days, with interest from the expiration of that time, or to pay sooner if taken away. It is presumable that the object was to make an under sale in the meantime at a profit. But teas falling in price, this expectation would seem to have failed; and the defendant thence would seem to have been casting himself about to be off the bargain. On calling at the compting house of the plaintiffs he affected to think that the parcels which had been set apart were not those he had purchased, some of them being as he alleged of an older importation. Driven from this, and calling at another time, he affected to think that the plaintiffs had disposed of some of the parcels and had not the teas to deliver. Driven from this, he subsequently would seem to have prevailed upon the plaintiffs to agree to let the teas remain in their compting house, and to dispose of them and to credit him the defendant with the proceeds, and to charge the difference. In this case what were the plaintiffs at liberty to do? What were they bound to do?. Were they at liberty to send the teas to auction? I take it that it would not be considered in the contemplation of the defendant that they should be sent to auction, as in that case a great sacrifice might be made, and which is not done but in a case where money must be raised at all events. Were the plaintiffs bound to employ a broker, or to go round the city, and to look for a purchaser ? I take it they were not bound to do this, no consideration being allowed to pay a broker as a compensation for the trouble, if the plaintiffs should take it on themselves. It cannot but be inferred that it was the understanding of the parties, that the teas should remaiu in the compting-house of the plaintiffs to be sold in the usual course of their business, when a purchaser should offer.
But were they to remain an idefinite length of time? This could not be the understanding of the parties, that the plaintiffs should be out of their money an indefinite length of time; for though the purchase money, or price of the teas, carried interest, yet this is not a compensation for men in *business. It must be construed a reasonable length of time. The plaintiffs did suffer them to remain a reasonable length of time; and it cannot but be presumed offered them for sale, and used the like diligence they would have used had the teas been their own; since they had an interest in the sale, the payment of themselves.
But ought they not to have given notice of the teas remaining on hand, before they brought suit ? At the trial *270 I inclined to think they ought; and now think it behoved them to have given notice. The plaintiffs themselves had this idea of the matter, and alleged that they had given notice; and offered to read a copy of the notice that they had given, which was by a letter to the defendant who had gone to reside at New York, but who had lived in the city at the time of the purchase. But this could not be read, notice not having been given in due time to the defendant to produce the original. The court in this case did not direct a nonsuit as they might have done, but left it to the plaintiffs at their option to suffer a nonsuit, or to go on and take a ver- ■ diet, subject to the exception of a want of notice to be considered in banc. I am of opinion that the plaintiffs could not sustain their action but on proving such previous notice given; for which reason the verdict must be set aside, and a new trial granted.
New trial granted, (a)

 This cause came on a second time for trial before the Chief Justice in February 1812. The plaintiffs had previously given notice to the defendant to produce a letter which they had written to ^ d¿ed t]ie 6tíl 0f March 1810 ; but he did not produoe They then called a witness, who swore tbat be bad made a copy of a letter bearing that da^0 addressed by the plaintiffs to the defendant; fliat’ ]l0 wag dil,0¿ted t]l0m on tll0 day it bor¿ da^ ieave the original at a certain house where lie believed by the number in the Directory the de~ fgmjant lived; and that he had accordingly delivered it to a female who had come into a store in the front part of that house from the apartments occupied by the family, and requested her to deliver it to the defendant. The -witness examined the number of the house on the day he gave his testimony, and by reference to the Directory of the year 1810, it was found to be the number of the house at which the defendant was then stated to reside. Upon this evidence the copy was offered to the jury.
n ■ ■ 7 , , ; • Original letter dehv- ¶ e a a louse, w m e, y ^ le num ei in xe 11 ec oí y, le efen - ant resided sufficient o jus if y te rea' mg °+ f ei n ice opio uce le origina .
Levy objected that the evidence was not sufficient to justify the admission of the copy.
Binney and Sergeant contended that it should go to the jury, and cited Assignees of Osburn v. Ross, 3 Binn. 539.
Tilghman C. J. In cases of this kind, where the proof is clearly deficient, I am in the practice of rejecting the writing at once. Where I think there is evidence to create a presumption that the original was delivered, but still leaving a doubt, I have referred it to the jury. There is no neces■sity for a delivery to the party personally; it is sufficient to leave it at his dwelling house. Here I -think there is sufficient evidence to let the copy go to the jury. I shall tell them, that if they think the letter was not delivered at the dwelling house of the defendant, they must pay no attention to it.
The jury again found a verdict for the plaintiffs.